560 A.2d 148

**In re ESTATE OF Mary Lou KEISER, Deceased.**

**Appeal of Benjamin TERCHA.**

Superior Court of Pennsylvania.

Argued Jan. 26, 1989.

Filed May 22, 1989.

Reargument Denied July 6, 1989.

26

Leon A. Mankowski, Philadelphia, for appellant.

Richard C. Buss, Whitehall, for appellee.

Before BROSKY, McEWEN and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

This is an appeal from the trial court's order affirming the probate of a copy of an unsigned, undated, and unwitnessed writing as the will of Mary Lou Keiser.

In 1971, a Philadelphia attorney prepared a will for Mrs. Keiser. Mrs. Keiser then received and signed the original will. Thereafter, her signature was witnessed by her neighbors, George and Elizabeth Ruppert.

For the next six years, Mrs. Keiser kept the original will in a safe in her home in Philadelphia. In December of 1977, however, Mrs. Keiser moved from Philadelphia to Emmaus, Pennsylvania, where she died on January 21, 1978. Before her move to Emmaus, Mrs. Keiser informed her neighbor, Mrs. Ruppert, that she had placed the will in a tan metal box, which she would use to transport important papers to Emmaus. Following her death, this same box was removed from Mrs. Keiser's apartment by her son, appellant Benjamin Tercha. The son testified that he found various bank books, insurance policies, and other documents in the box but that the box did not contain his mother's will. The original will of Mrs. Keiser has never been located; therefore, an unsigned copy of the will prepared in 1971 was offered for probate. This writing was admitted to probate as the Last Will and Testament of Mrs. Keiser by the Register of Wills of Lehigh County, Pennsylvania, in October of 1978. The disputed document gave one-half of the estate to George and Elizabeth Ruppert and one-half to Benjamin Tercha.

The record also indicates that sometime after 1974, Mrs. Keiser indicated to Mrs. Ruppert that she was considering removing her son, Mr. Tercha, from her will. Additionally, there was testimony that shortly before Mrs. Keiser's death, she had a conversation with a friend which indicated

that her will had as its beneficiaries the Rupperts and Mrs. Keiser's grandchildren. This conversation, however, made no mention of Mr. Tercha's status as a beneficiary. Also, Mrs. Keiser's sister testified that she received a letter from Mrs. Keiser which demonstrated her intent to visit an attorney on January 19, 1978. The letter also stated that the Rupperts were the sole beneficiaries of the will.

Mr. Tercha filed exceptions to the orphan's court order which served to dismiss his appeal from the decree of the Register of Wills admitting to probate the disputed writing. Mr. Tercha is Mrs. Keiser's only intestate heir; and if successful in proving that the writing admitted to probate is not the last will and testament of Mrs. Keiser, Mr. Tercha will take the entire estate by intestacy.

On appeal, Tercha frames the issue for our review in the following terms: "Did not the Learned Trial Judge err in confirming the probate of an unsigned, unwitnessed and undated copy of a will as the Last Will and Testament of the decedent?" In sum, Tercha contends that the document admitted to probate by the register of wills did not conform with the provisions of the Wills Act.

The Probate, Estates and Fiduciaries Code provides that every will must be in writing and signed by the testator at the end of the will. 20 Pa.C.S. § 2502. As such, an instrument which is not signed, as required by statute, cannot be given effect as a will. *Matter of Estate of Coniglio*, 324 Pa.Super. 527, 472 A.2d 205 (1984); *In re Sciutti's Estate*, 371 Pa. 536, 92 A.2d 188 (1952).

Judicial precedent, however, has carved out an exception for a "lost will." *In re Murray's Estate*, 404 Pa. 120, 171 A.2d 171 (1961). In order to establish the existence of a lost will which was in the custody of the testatrix prior to her death, the proponent of the will must overcome the presumption that the testatrix destroyed or revoked her will. *Id.* As such, the proponent of the will must prove the following factors by utilizing evidence which is positive, clear, and satisfactory: (1) that the testatrix duly and properly executed the original will; (2) that the contents of the executed will were substantially the same as on the

copy of the will presented for probate; and (3) that the testatrix had not destroyed or revoked her will prior to her death. *Michell v. Low et al.*, 213 Pa. 526, 63 A. 246 (1906). Declarations of intent, condition, and circumstances of family are insufficient to establish these factors and thus rebut the existent legal presumption. *Gardner v. Gardner et al.*, 177 Pa. 218, 35 A. 558 (1896). Accordingly, a court will not weigh the probability of the decedent's wishes or otherwise speculate as to the motives which may or may not have influenced the testatrix in the direction of intestacy. *O'Neill's Estate*, 58 Pa.D & C 351 (1946).

A court may, however, entertain evidence as to the fact that hostile heirs had access to the testatrix's will before its alleged disappearance. *Hodgson's Estate*, 270 Pa. 210, 112 A. 778 (1921). Nevertheless, the mere fact that hostile heirs had such access to the will and a motive to destroy the will is insufficient to create the presumption that the will was destroyed by someone other than the testatrix without the testatrix's knowledge. *Id.*

Upon review of the instant case, it is evident that the will was within Mrs. Keiser's custody upon her death. As such, the Rupperts had the burden of establishing the three factors to support a finding that the will was lost. Taken individually, Mr. Tercha does not contest the Rupperts' ability to meet the first factor, namely, that Mrs. Keiser duly and properly executed the will. As such, this Court shall focus on the Rupperts' ability to establish the second and third factors.

The Rupperts presented little evidence to establish that the contents of the original will were substantially similar to the contents of the will presented for probate, and that Mrs. Keiser had not revoked or destroyed her will prior to her death. Essentially, the evidence presented by the Rupperts served to describe Mrs. Keiser's relationship with Mr. Tercha. Further, Mrs. Ruppert testified as to a conversation she had with Mrs. Keiser in 1974, wherein she persuaded Mrs. Keiser to keep Mr. Tercha in the will. Additionally, the Rupperts presented evidence which effectively established that Mr. Tercha was in Mrs. Keiser's apartment

after her death, at which time he had access to the will. Taken as a whole, this evidence does not clearly and satisfactorily rebut the presumption needed for the will to have been admitted to probate.

The evidence regarding Mrs. Keiser's relationship with Mr. Tercha is insufficient to rebut this presumption, as is the content of a conversation between Mrs. Ruppert and Mrs. Keiser which took place four years before Mrs. Keiser's death. *Gardner, supra.* Moreover, the fact that Mr. Tercha had access to Mrs. Keiser's will after her death and had a motive to destroy the will does not create the presumption that Mr. Tercha destroyed the will. *Hodgson's Estate, supra.* As such, the will should not have been admitted to probate, and the trial court erred in affirming its admission to probate.[1]

Accordingly, this Court reverses the order of the trial court.

---

1. The law applicable to our decision does not simply provide guidance, it binds us tightly and precludes any consideration of notions which may be equitable in character.